CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
APR 3 0 2010
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DANNY A. JORDAN, SR., <br><br> *Plaintiff,* <br><br> v. <br><br> GOBO, INC., <br><br> *Defendant.* | CIVIL ACTION NO. 6:09-CV-00059 <br><br><br> <u>MEMORANDUM OPINION</u> <br><br><br> JUDGE NORMAN K. MOON |

The pro se Plaintiff filed the above-referenced civil action in forma pauperis, alleging violations of the Fair Labor Standards Act ("FLSA"). Defendant filed a motion to dismiss (docket no. 7), and Plaintiff filed a response (docket no. 13) to the motion to dismiss.[1] As stated on the record at the hearing on the motion to dismiss, the complaint was submitted with five exhibits in support thereof, the motion to dismiss also relied on documents outside the pleadings, and I determined that the motion should be converted to one for summary judgment.[2] Subsequently, I entered an order giving the parties fourteen days to present affidavits or other evidence indicating whether there is a genuine issue of material fact as to Plaintiff's FLSA

---

[1] The Office of the Clerk issued a notice (docket no. 8) advising the pro se Plaintiff, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), that he had 20 days within which she could file a response to Defendant's motion.

[2] When a defendant attaches a document to its motion to dismiss, "a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and the plaintiffs do not challenge its authenticity." *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Here, the extrinsic evidence submitted by Defendant is either integral to or referenced by Plaintiff's complaint; however, out of an abundance of caution, I decided to convert the motion to one for summary judgment.

claims.[3] Thereafter, Plaintiff submitted a response to Defendant's motion, including his own declaration.

For the reasons stated herein, Defendant's motion for summary judgment will be granted.

## I.

The Defendant in this case, GoBo, owns and operates a Bojangles restaurant franchise on Timberlake Road. Plaintiff states that he was hired in November 2008 as an assistant manager for the Timberlake Road Bojangles, which opened on January 29, 2009. After Plaintiff was hired, he was sent to a 5-week training program in North Carolina, which required him to travel to North Carolina on a weekly basis. During this period of training, Plaintiff worked 5 days per week, 12 hours per day. He was required to take a test, which he passed, and the test required "[o]ff clock time, up to 2 hours daily . . . to master skills to pass the test. . . . Training ended on or about December 23, 2008." Plaintiff states that mangers reported back to work on January 5, 2009, and "worked [a] normal 40 hour work week from January 5 to 9, 2009," but "[t]he next week managers went back to a 12 hour day," which "were standard for plaintiff until the end of February, 2009. . . ."

---

[3] When matters outside the pleadings are presented to (and not excluded by) a court on a motion to dismiss, the motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d). "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* I add that complaints filed by pro se plaintiffs are construed more liberally than those drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). "However inartfully pleaded by a *pro se* plaintiff, allegations are sufficient to call for an opportunity to offer supporting evidence unless it is beyond doubt that the plaintiff can prove no set of facts entitling him to relief." *Thompson v. Echols*, 191 F.3d 448 (4th Cir. 1999) (Table) (citing *Cruz v. Beto*, 405 U.S. 319 (1972)). Nevertheless, while pro se litigants cannot "be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985). Even in cases involving pro se litigants, district courts "cannot be expected to construct full blown claims from sentence fragments." *Id.* at 1278.

Plaintiff contends that he "worked approx. 535 hours of uncompensated overtime in the execution of his duties required by the defendant." Plaintiff asserts that, "[i]n general, every business must classify each of its employees as 'exempt' or 'non-exempt' from the minimum wage and overtime requirements of the FLSA," and that, "[u]nless an employee meets the criteria for exemption the employee is entitled to overtime pay for all work over 40 hours in one week."

Plaintiff contends the FLSA was violated in three ways. First, he asserts that, although he would ordinarily fall under the "white collar" exemption to the FLSA,

> Defendant <u>violated the **duties** test by not meeting the requirement that his opinion was given significant weight in the firing, disciplining,</u> (was always overridden on each of both factors, even when good cause was present and good business practice demanded his decision be followed) <u>being overridden on food management</u>, promotional, advancement and other change of status of other employees are given particular weight. . . .

(Ellipses inserted; otherwise verbatim quote.)

Plaintiff next contends that he is not exempt because he was not paid "'on a salary basis' within the meaning of the FLSA. . . ." According to Plaintiff, the "salary basis test" ("SBT") requires that an "individual regularly receives a predetermined amount constituting all or part of his or her compensation each pay period," and "<u>[t]his salaried amount cannot be reduced because of variations in the quality or quantity of the work performed.</u>" Plaintiff asserts that a

> violation of the SBT occurred when plaintiff used sick time to complete the pay period June 21-28, 2009. . . . Work week starts on Monday and end on Sunday. This particular week plaintiff work the Monday June 22, 2009 which required full pay without use of sick time. Plaintiff was admitted to hospital on or about June 23, 2009 for treatment of fever as a result of infection.

\* \* \*

> Again Plaintiff worked Monday and Tuesday July 20 and 21 the first two day of the pay period and received pay . . . for only the day's worked. . . . No attempt

was made to follow the requirements of the FLSA, after being made aware there was a problem.

* * *

To date defendant has not resolved this issue.

(Ellipses inserted; otherwise verbatim quote.)

Plaintiff further contends that, to qualify for the FLSA's overtime exemption as an exempt executive, administrative, or professional employee, "an employee 'must be compensated on a salary basis at a rate of not less than $455 per week,'" and "Plaintiff [*sic*] salary was less than the required amount." Plaintiff contends that, of the four managers hired as salaried employees, he "was the only one of the four whom [*sic*] was not paid the required salary to be classified exempt under the FLSA."

Plaintiff requests a jury trial, and seeks the following relief (quoted verbatim):

I. Actual damages in the amount of $6,901.50 (535 hours @ $12.90) as prescribed by statue,

II. Liquidated damages of $6,901.50 as allowed by statute,

III. Cost paid by plaintiff of $2,500.00 (research fee of 20 hrs@$125per hr.), Lawyer fees ( at completion of trail will be reach upwards of $20,000) allowed by statue.

IV. Back wages of $1,204.00 ( two weeks plus 4 days),

V. Punitive damages of $74,326.00,

VI. Award total of $94,847.00 plus lawyer fees and court cost.

The complaint is submitted with five exhibits in support thereof. Exhibit A is a photocopy of two pages from "day planner" calendars -- one for "July 6-12, 2009," and another for Monday the 24th, Tuesday the 25th, and Wednesday the 26th of an unspecified month and year. Exhibit B is a photocopy of two pay stubs, one for the pay period "06/22/2009-

06/28/2009," showing that Plaintiff was paid $430.77 in salary for that period, that he had used 20 hours of sick leave for the "year to date," and that he had "-20.00" hours of sick leave available; the other pay stub is for the pay period "07/20/2009-07/26/2009,"showing that Plaintiff was paid $172.31 in salary for that period, that he had used 20 hours of sick leave for the "year to date," and that he had "-20.00" hours of sick leave available.

Exhibit C is an affidavit by Olivia Parrish,[4] "submitted under penalty of perjury" on October 15, 2009 (five days before the instant lawsuit was filed), stating, in pertinent part (quoted verbatim):

> On or about August 8, 2009 I hand delivered a letter to Phil Lynch at Bojangles on Timberlake Road. This letter was given to me by Dan Jordan and at the time we discussed the contents of letter. It was my understanding that this letter discussed the problem Dan Jordan was having with getting his payroll straight concerning time owed him from his being out of work on doctors' orders.

Exhibit D appears to be a print-out of an e-mail from Plaintiff to Phil Lynch, Defendant's president. The e-mail is dated "Monday, August 3, 2009 11:19 AM," and states "Time used" in the subject line. The e-mail states, in relevant part (quoted verbatim):

> The follow-up per our conversation 8/3/09.
> Worked complete weeks until June 23. For pay period 6/22 -28. Worked 6/22. 23. . Used Sick time 24, 25, 26 week completed and paid. <u>Used 3 sick days.</u>
>
> Scheduled off 27 - 30.
>
> Used sick day for July 1, 2 . <u>Used 2 sick days</u>. Exhausted sick time.
>
> Used vac for 3, 4, 5. <u>Used 3 vac days</u>
>
> Back to work July 6 - 21.
>
> Pay period July 20 - 26;.

---

[4] According to the complaint, Ms. Parrish was a "Co-Unit director," apparently of the Timberlake Road Bojangles.

> Worked July 20 & 21. Scheduled off 22 and 23.
> Used vac July 24, 25, 26. <u>Used total 6 vac days</u>. Complete week no check issued.
> July 27, 28, 29, 30. Used 4 vac days. <u>Exhausted vac time.</u> No check issued for 4 day week.
> Summary; Owed complete week plus 4 day week. Please let me know if our records don't match.
> Thanks

Exhibit E is a copy of certified mail receipts, indicating that a certified letter was mailed to Mr. Lynch on October 5, 2009, and was received by an unspecified person on October 6, 2009.

## II.

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). To preclude summary judgment, a factual dispute must not only be material, but also "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the

nonmoving party. *See e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *See Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact." (citing *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001)). Indeed, a trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

### III.

In support of its motion to dismiss, Defendant has submitted the affidavit of its president, Phillip Lynch, which is, in turn, supported by 5 exhibits. The affidavit explains that the Bojangles restaurant owned by Defendant "is a new franchise and the first restaurant franchise that our company has operated," and includes the following pertinent statements:

> Danny Jordan was among the first group of managers hired for the restaurant, which opened on January 29, 2009. He was hired as an assistant manager at an annual salary of $22,400, which is a figure we discussed in the interview process and he agreed to. All of our managers are salaried, exempt employees. Attached as Exhibit 1 hereto is a copy of his offer letter.
>
> 4. We categorized Mr. Jordan as an exempt employee under the Fair Labor Standards Act (FLSA) in part because he worked in an executive or administrative capacity in which more than 50% of his job duties involved the

supervision of other employees. We also followed the guidance of the Bojangles franchise corporate office which categorizes assistant managers as exempt because of their job duties.

5. Mr. Jordan engaged in a six-week manager training program during November and December, 2008, and was paid his salary during that period. Because of a delay with completion of the restaurant building facility, he and the other managers did no work for a three-week period in January, but were paid their full salaries during that period.

6. As the offer letter indicated, Mr. Jordan's salary was intended to cover a work week of five ten-hour days. He usually did not actually work the entire 50 hours each week. Mr. Jordan frequently worked the night shift, which is scheduled until midnight, but he was usually out of the store shortly after 11:00pm. [Sic, spacing.]

7. Because of a health condition, Mr. Jordan has been out of work on medical leave since July 22, 2009. He recently informed the store manager that he had been released by his doctor to return to work, and we have invited him to return. Attached as Exhibit 2 is my letter to him concerning return to work and other matters.

8. On August 3rd, while he was out of work on sick leave, Mr. Jordan telephoned me to discuss his concerns about sick leave. I asked him to document what sick time he had used and e-mail it to me, and I would have store manager Deanne Lick examine our records. Attached as Exhibit 3 is the follow up e-mail that I received from Mr. Jordan on August 3, 2009[.] The e-mail deals only with sick leave and makes no mention of pay issues under the FLSA. Deanne Lick attempted to contact Mr. Jordan but he did not return her phone calls. After Deanne Lick examined the records, we paid Mr. Jordan for two additional days sick leave, although subsequent investigation revealed that we had actually overpaid him for sick leave.

9. Mr. Jordan never communicated to me any concern about being improperly paid in violation of the FLSA until his letter dated October 5, 2009 (attached as Exhibit 4). I had received no prior letter from him about any FLSA pay issues. Although the letter says it is "the second of its kind", [sic] I had received no prior letter. I received the letter on October 6, and immediately placed a call to Mr. Jordan that same day, using his same cell phone number where I had reached him on previous occasions. He did not answer the phone, and I left him a voicemail message to call me back so we could discuss the issues in his letter. He never returned my call.

10. If Mr. Jordan had returned my call, my intention was to arrange a meeting with him to determine if the claim in his letter had merit and to resolve it,

in accordance with the complaint procedure in the company's policy manual. An excerpt from the manual containing the policy (section VI-1-2) is attached as Exhibit 5. The manual was given to all managers, including Mr. Jordan.

11. Approximately two weeks prior to receiving Mr. Jordan's October 5 letter, I had telephoned him to inquire about his health and ask when he would be able to return to work. We had a cordial conversation and Mr. Jordan made no mention whatsoever of any concern about his pay.

12. Mr. Jordan's letter of October 5 does not specify how he claims the company violated the FLSA, and by declining to return my phone call he failed to give the company an opportunity to learn the specifics of his claim and to remedy the problem. After having been notified for the first time by means of this lawsuit that the company had failed to pay Mr. Jordan the $455.00 per week salary required to categorize an employee as exempt under the FLSA, the company has paid him $848.05, which represents the $24.23 per week difference between the $430.77 per week he was actually paid, and the $455.00 required by the FLSA, for the 35 weeks that he has worked. Exhibit 2 references the payment to him.

13. Prior to filing this lawsuit, Mr. Jordan had given the company no notice or opportunity to remedy the company's error in paying him less than $455.00 per week.

14. The company's error in paying Mr. Jordan less than $455.00 per week was inadvertent and would have been corrected earlier if he had brought it to the company's attention.

Exhibit 1 to the affidavit is Defendant's November 3, 2008, offer letter to Plaintiff.[5]

Exhibit 2 to the affidavit is a letter, dated November 13, 2009, to Plaintiff from Mr. Lynch, stating, in relevant part:

> Recently you contacted Olivia Parrish, our store co-manager, to let us know that you had received your medical release to return to work. We have held your job open pending your medical ability to return to work. Please give me a call to arrange a time to meet. [B]ring a copy of your medical release, and we'll plan the resumption of your work schedule.
>
> Now that you've brought to our attention our error in paying you less than the minimum $455 a week required for exempt employees under the FLSA, we are

---

[5] Plaintiff was offered an annual salary of $22,400, "based upon five ten (10) hour days." After the store was open for 90 days, Plaintiff was also eligible for a monthly bonus based upon gross sales.

raising your salary to $455 a week. Enclosed is a check for $848.05, which represents the difference between the $430 and the $455 a week for the 35 weeks that you received a salary payment.

Exhibit 2 also includes a copy of the check and pay stub, remitting to Plaintiff gross salary of "$848.05" for "Pay Period: 11/07/2009 - 11/13/2009."[6]

Exhibit 3 to the affidavit is a print-out of the e-mail, dated August 3, 2009, that Plaintiff sent to Mr. Lynch. The text of that e-mail has already been restated. Exhibit 4 is a letter, dated October 5, 2009, from Plaintiff to Mr. Lynch. The letter states, in pertinent part (verbatim quote):

> This letter is the second of its kind to inform you that we have a serious hour and labor problem that needs to be resolved asap. As I explain in an e-mail and a letter delivered to you by Olivia that you seem to have believe, had no factual basis. You told me that you would talk to unit Director Deanna Lick and resolve this issue. On July 26 I received your response and that was a check for 2 days work. That is a serious violation of the Fair Labor standards Act of 1938 and amended sections.
>
> **Item # 1**
>
> During my time off for medical reason in June and July of this year you used me sick time and vacation to pay me for June and July time out. By statute you had the right to use only the sick time. <u>This leaves two weeks vacation that is still unpaid</u>. You need to check the FLSA rules for exempt salaried employees. You have violated Two of the three requirements that allow the exemption from overtime. I have given you this information once before and you and the UD believe it to be incorrect. But both of you were wrong.
>
> **Item #2**
>
> The above violation and another (salary level requirement of the FLSA) have subject your to all the overtime worked by me (which by my records amounts to around 635 hours) and liquidated damages. You should seek legal help because all of this is a matter of statutory law and 29 USCA. The Western District of VA and the 4th circuit have a lot of case law on this subject.

---

[6] After taxes and other withholdings, the net amount was $752.18. At the hearing in this matter, it was confirmed that Plaintiff had been reimbursed.

**Remedy**:

If item #1 is not taken care of within five days of this letter (because it is benefits owed) I will file a complaint with the DOL under FLSA 29 USC and file in the US District Court under a 29 USC violation. If you believe I am wrong you need to do nothing because in 5 days I will act. Taht will only leave the settlement of the actual overtime that we should be able to reach a mutually agreeable settlement.

Please Phil get good legal advice because if this goes to court, it will have a minimum cost of you of $2000,000 by the time I finish with it. But that is your choice.

Remember if item one is not taken care of within five days you forfeit all rights to settle this in my eyes I will process accordingly.

Exhibit 5 is a copy from GoBo, Inc.'s "**Personnel Policies**," specifically, section VI-1, subtitled "<u>**General Policy**</u>."

## IV.

### A.

Defendant contends that the complaint should be dismissed because the allegations fall within the FLSA's "safe harbor" or "window of correction." Title 29 of the Code of Federal Regulations, part 541, section 603, provides, in pertinent part:

> (c) Improper deductions that are either isolated or inadvertent will not result in loss of the exemption for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions.
>
> (d) If an employer has a clearly communicated policy that prohibits the improper pay deductions specified in § 541.602(a)[7] and includes a complaint mechanism, reimburses employees for any improper deductions and makes a good faith commitment to comply in the future, such employer will not lose the exemption for any employees unless the employer willfully violates the policy by continuing to make improper deductions after receiving employee complaints. If an employer fails to reimburse employees for any improper deductions or continues

---

[7] Setting out the "General rule" for paying an employee on a salary basis.

-11-

to make improper deductions after receiving employee complaints, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions. The best evidence of a clearly communicated policy is a written policy that was distributed to employees prior to the improper pay deductions by, for example, providing a copy of the policy to employees at the time of hire, publishing the policy in an employee handbook or publishing the policy on the employer's Intranet.

Subsection (e) of § 603 further states: "This section shall not be construed in an unduly technical manner so as to defeat the exemption."

Section VI-1-2 of GoBo, Inc.'s personnel policy states as follows:

It is the policy of GoBo, Inc. to make every effort to adhere to all government labor laws and regulations. In the event that any associate of our company has a question or complaint concerning proper adherence to any regulation or law, we request that individual to notify and meet with an owner of the company to determine if a violation took place and to give the company an opportunity to resolve the issue.

Defendant contends that Plaintiff received a copy of the policy, and Plaintiff does not dispute this contention. Mr. Lynch states that Plaintiff failed to follow the policy, failing to give the company notice of the FLSA overtime pay issue and an opportunity to remedy the problem. Although Plaintiff claims he notified the company of the problem prior to his demand letter of October 5, 2009 (the instant complaint was filed on October 20, 2009), it is clear that Plaintiff's only prior communications dealt with a sick leave issue, and not any FLSA issue. Mr. Lynch avers that he attempted to communicate with Plaintiff after receiving the letter of October 5, 2009, but that Plaintiff would not return his telephone call. While Plaintiff's demand letter of October 5, 2009, refers in general terms to a FLSA violation, Defendant contends that the first notice it received from Plaintiff regarding the error in not paying him $455 per week was when Defendant was served with the instant complaint. The evidence in the record does not indicate that Defendant had any earlier notice of improper deductions in violation of FLSA, and

Plaintiff's contentions and submissions do not indicate any genuine issue of material fact. After having been served with the instant lawsuit (and being informed of its error), Defendant promptly remedied its error by paying Plaintiff the back pay due to him, and raised Plaintiff's salary to the correct level of $455 per week.

I find that Defendant has met its burden of showing that it has a clearly communicated policy that prohibits improper pay deductions, and includes a complaint mechanism; that the improper deductions were inadvertent, and given that they affected only Plaintiff, and not other employees, they were isolated; that Defendant discontinued the improper deductions after receiving sufficient notice of Plaintiff's dispute, and reimbursed Plaintiff the amount due; and Defendant's conduct demonstrates a good faith commitment to comply in the future. 29 C.F.R. § 541.603; *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 372 (7th Cir. 2005) (discussing 29 C.F.R. § 541.603 and predecessor regulation, 29 C.F.R. § 541.118(a)(6) (effective prior to August 23, 2004), providing a "window of correction," which "protected employers who intended to pay their employers on a salary basis, but who, inadvertently and infrequently, docked an otherwise salaried employee"; plaintiffs could "identify only three affected individuals among them, none of whom lost more than the equivalent of a few hours of pay," and because defendant had "reimbursed the plaintiffs for these improper, but inadvertent, deductions, it may invoke the regulation's 'window of correction'"); *see also Cavanaugh v. Southern California Permanente Medical Group, Inc.*, 583 F. Supp. 2d 1109, 1134 ("The mere fact that an employer may have made an improper deduction to an exempt employee's salary does not mean that the exemption is automatically los[t]."). Accordingly, Defendant satisfies the requirements of the "safe harbor" or "window of correction" defense provided for in 29 C.F.R. 541.603, and Defendant's motion for summary judgment will be granted.

**B.**

Even were the "safe harbor" or "window of correction" defense unavailable to Defendant, the evidence does not support Plaintiff's claims for damages. In the first instance, Plaintiff fails to show a basis for his actual damages claim. The complaint alleges that Plaintiff worked 535 hours of uncompensated overtime and refers to Exhibit A. Exhibit A to Plaintiff's complaint, however, is nothing more than a photocopy of two pages from "day planner" calendars -- one for "July 6-12, 2009," and another for Monday the 24th, Tuesday the 25th, and Wednesday the 26th of an unspecified month and year. Exhibit A does not support Plaintiff's allegation.

**C.**

Plaintiff asserts a claim for "liquidated damages," yet the evidence does not support such a claim. Under the FLSA, a court may deny damages if "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that the had reasonable grounds for believing his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260; *see also Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997). Circumstances such as the employee's failure to approach the employer to raise the question and seek overtime compensation can give rise to an inference of the employer's good faith. *Mayhew*, 125 F.3d at 221. Additionally, a finding that the employer did not act willfully in violating the FLSA "can provide an objective basis to premise a finding of good faith on the liquidated damages issue." *Id.* at 221 n. 4. Under the FLSA, a willful act is "generally understood to refer to conduct that is not merely negligent" but rather an act that indicates "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLauchlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988); *see also Brown v. Nipper Auto*

*Parts*, 2009 WL 1437836, *5, Civil Action No. 7:08-cv-00521 (W.D. Va. May 21, 2009).

The record here indicates that Defendant's failure to pay Plaintiff the base rate of $455 per week, as required under the administrative exemption to the FLSA, was inadvertent or negligent. Defendant's offer letter to Plaintiff, offering the job and setting out the terms of employment, makes it clear that Defendant's intention was for Plaintiff to be paid a fixed salary, regardless of the number of hours he worked per week. As in *Mayhew, supra*, Plaintiff failed to bring the oversight to Defendant's attention -- until he issued his demand letter of October 5, 2009. Thereafter, upon receiving notice of the instant lawsuit, which was filed on October 20, 2009, Defendant promptly paid the amount due to Plaintiff. These actions all demonstrate Defendant's good faith, which defeats a claim for liquidated damages.

### D.

Plaintiff asserts a claim for punitive damages. Punitive damages are not permitted under the FLSA. *See* 29 U.S.C. § 216(b); *Lanza v. Sugarland Run Homeowners Ass'n, Inc.*, 97 F. Supp. 2d 737, 742 (E.D. Va. 2000).

### E.

Plaintiff is proceeding pro se, but is seeking an award of attorney's fees and costs. Because he is not being represented by an attorney, he is not entitled to such an award, even were he to prevail in this action. *See, e.g., Bond v. Blum*, 317 F.3d 385, 398-99 (4th Cir. 2003); *Rhoads v. FDIC*, 286 F. Supp. 2d 532, 541 (D. Md. 2003).

### V.

For the stated reasons, Defendant's motion to dismiss (docket no. 7), which has been converted into a motion for summary judgment, will be granted, and this matter will be stricken from the active docket of the court.

The Clerk of the Court will be directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this 30th day of April, 2010.

*Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE